## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In the matter of the Arbitration Between | : | |
| | : | |
| AAMCO TRANSMISSIONS, INC., | : | |
| Claimant, | : | **MISCELLANEOUS ACTION** |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RIZVI M. SALLY & | : | |
| MOHAMMED A. ASHROFF, | : | **No. 08-151** |
| Respondents. | : | |

**Schiller, J.**                                                                 **December 17, 2008**

AAMCO Transmissions, Inc. (AAMCO) claims that franchisees, Rizvi M. Sally and Mohammed A. Ashroff (sometimes collectively referred to as "Franchisees") violated numerous provisions of the parties' Franchise Agreement. The Franchise Agreement contained an arbitration clause and on August 7, 2008, the parties arbitrated their dispute. The arbitrator ruled in favor of AAMCO. AAMCO then filed a petition with this Court to confirm the arbitration award. Franchisees filed a petition to vacate or modify the award, or, in the alternative, for a rehearing, to which AAMCO has responded. For the reasons below, the Court denies the petition to vacate and grants the petition to confirm.

## I.      BACKGROUND

On January 27, 2004, Sally and Ashroff signed a franchise agreement that allowed them to operate, for fifteen years, an AAMCO center at 1545 Pine Street in San Francisco, California. Sally is married to Ashroff's daughter. (Pet. to Vacate Arbitration Award ¶ 6.) According to affidavits accompanying the petition to vacate, Ashroff signed the Franchise Agreement to provide support for Sally and for Ashroff's daughter and to help them "make a good life." (*Id*. Ex. 1 [Sally Aff.] ¶ 6 &

*Id*. Ex. 2 [Ashroff Aff.] ¶ 7.)   In signing the Franchise Agreement, Sally and Ashroff committed to devote their "full time, energy and effort to the operation of [the] center, and agree[d] not to engage in any other business either at the location of [the] center or at any other location." (Pet. to Vacate Arbitration Award Ex. A [Franchise Agreement] ¶ 5.2.)   After signing the Franchise Agreement, however, Ashroff left the day-to-day business operations to Sally.   (Sally Aff. ¶ 6; Ashroff Aff. ¶ 7.) In fact, shortly after signing the Franchise Agreement, Ashroff stopped opening mail from AAMCO, instead giving it to Sally unopened because the business belonged to Sally.   (Sally Aff. ¶ 7; Ashroff Aff. ¶ 8.)

The Franchise Agreement required Sally and Ashroff to pay AAMCO a weekly franchise fee of 7% of the preceding weeks gross receipts.   (Franchise Agreement ¶ 3.1.)   Franchisees also agreed to mail to AAMCO an accurate report of gross receipts and copies of the repair orders for all work completed during the preceding week.   (*Id*. ¶ 4.1.)   They also agreed to keep accurate books and records and to promptly deliver to AAMCO numerically certified work or repair orders using forms provided by AAMCO.   (*Id*. ¶ 11.1.)   Sally and Ashroff further promised to pay their proportionate share of certain national and local advertising expenses.   (*Id*. ¶¶ 7.1-7.3.) AAMCO agreed to provide certain equipment and supplies to franchisees, subject to standard credit approval.   (*Id*. ¶¶ 6.1, 9.2.) The agreement allowed AAMCO to charge franchisees an annual interest rate of 18% for unpaid amounts due under the agreement, in addition to costs and attorneys' fees.   (*Id*. ¶ 14.1.)   AAMCO was also entitled to the costs of investigating the reporting practices of its franchisees.   (*Id*. ¶ 11.3.)

The Franchise Agreement contained a "Mediation and Arbitration" clause that required disputes, controversies, or claims arising out of or relating to the Franchise Agreement to be settled by binding arbitration according to the rules of the American Arbitration Association.   (*Id*. ¶

2

22.1(b).)  When a provision of the agreement required notice, the notice had to be in writing and

mailed via certified or registered mail, return receipt requested or overnight mail.  (*Id*. ¶ 21.4.)  Sally

and Ashroff agreed to accept notice at their AAMCO franchise.  (*Id*.)

Unfortunately, the franchises' finances began to sour as Sally had trouble meeting his

financial obligations to AAMCO.  But Sally hid these difficulties from Ashroff.  On or about

October 9, 2007, AAMCO filed a Demand for Arbitration with the American Arbitration

Association.  (Pet. to Confirm Arbitration Award Ex. B [Arbitration Demand & Statement of

Claim].)  Notice was mailed to Sally and Ashroff at their business address.  (Mem. of Law in Opp'n

to Pet. to Vacate Arbitration Award [Opp'n to Pet.] Ex. B [O'Connell Aff.] ¶ 2.)  According to the

Statement of Claim included with the Arbitration Demand, Sally and Ashroff violated a number of

the Franchise Agreement's provisions.  For instance, they failed to submit numerous weekly business

reports and pay a number of franchise fees.  (Arbitration Demand & Statement of Claim ¶¶ 17-21.)

An audit conducted by AAMCO also revealed that they had intentionally misrepresented and under-

reported gross receipts.  (*Id*. ¶¶ 22-27.)  Finally, Sally and Ashroff had failed to pay a large sum of

money to their local advertising group.  (*Id*. ¶¶ 28-30.)  As a result of these breaches of the Franchise

Agreement, AAMCO sought damages of $258,998.79, plus any other sums that may be due and

owing, as well as costs.  (*Id*. ad damnum clause.)

Sally did not tell his father-in-law that AAMCO had made an arbitration demand, or that an

arbitration was scheduled, or that the arbitration occurred.  (Sally Aff. ¶ 8; Ashroff Aff. ¶ 9.)

Nonetheless, it is undisputed that Sally received notice of the arbitration.  Additionally, an August

1, 2008 report and order from John Salla, the AAA-appointed arbitrator, notes that "respondents"

made repeated requests to postpone the arbitration.  (Opp'n to Pet. Ex. C [Poliner Aff.] at Ex. 1

3

(Report and Order).)  On July 31, 2008, Sally participated in a conference call in which he requested

a postponement of the arbitration to obtain an attorney.  (Report and Order.)  Because the arbitrator

found that Sally and Ashroff had had ample time to retain counsel, he ordered that the arbitration

proceed on August 7, 2008, as scheduled.  (*Id*.)  On August 5, 2008, Sally hired a law firm to

represent both him and Ashroff but Sally failed to inform Ashroff of this representation.  (Pet. to

Vacate Arbitration Award ¶ 16; Sally Aff. ¶ 10; Ashroff Aff. ¶ 11.)  The law firm hired by Sally

obtained local counsel to attend the arbitration on behalf of Franchisees.  (Sally Aff. ¶ 10; Pet. to

Vacate Arbitration Award Ex. 4 [Schwartz Aff.] ¶ 3.)  The arbitration occurred on August 7, 2008;

the lawyer representing Sally and Ashroff sought a continuance because Sally was ill, but the

arbitrator refused this request.  (Sally Aff. ¶ 11.)

On August 13, 2008, Arbitrator Salla found in favor of AAMCO and awarded $261,840.70

plus costs.  (Pet. to Confirm Arbitration Award Ex. C [Award].)  On August 22, 2008, AAMCO filed

a Petition to Confirm Arbitration Award in this Court.  According to Franchisees, it was not until

Sally was served with the petition to confirm the arbitrator's award that he made his father-in-law

aware of their business' misfortunes.  (Sally Aff. ¶ 12; Ashroff Aff. ¶ 12.)


## II.   STANDARD OF REVIEW

A district court must confirm an arbitration award unless it is vacated, modified, or corrected

as prescribed by the Federal Arbitration Act (FAA).  9 U.S.C. § 9 (2008).  The FAA provides that

a district court may vacate an arbitration award if: (1) the award was procured by corruption, fraud,

or undue means; (2) there was evident partiality or corruption in the arbitrators, or either of them;

(3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient

cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.[1]   9 U.S.C. § 10.   A district court may modify or correct an arbitration award if: (1) there was evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award; (2) the arbitrators have awarded upon a matter not submitted to them; or (3) the award is impefect in matter of form not affecting the merits of the controversy.   9 U.S.C. § 11.

District courts should vacate arbitration awards only in "exceedingly narrow" circumstances and must apply an "extremely deferential" standard of review.   *Rita's Water Ice Franchise Co. v. Simply Ices, Inc.*, Civ. A. No. 08-2011, 2008 U.S. Dist. LEXIS 77963, at *6 (E.D. Pa. Oct. 3, 2008) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)).   There is a "strong presumption"

---

[1] The Third Circuit has recognized an additional judicially created reason for vacatur for awards made in "manifest disregard of the law." *Roadway Package Sys. v. Kayser*, 257 F.3d 287, 291 n.2 (3d Cir. 2001).   Recently, however, the Supreme Court considered whether parties may agree to supplement the statutory grounds for modification and vacatur to include erroneous legal conclusions and factual findings not supported by substantial evidence.   *Hall Street Assoc. v. Mattel, Inc.*, 128 S. Ct. 1396 (2008).   The Supreme Court held that the FAA provides the exclusive grounds for vacatur and modification.   *Id.* at 1404 ("[T]he text [of the FAA] compels a reading of the §§ 10 and 11 categories as exclusive.").   Courts are now grappling with the import of this holding.   *See Stolt-Nielsen SA v. Animalfeeds Int'l Corp.*, App. A. No. 06-3474, 2008 U.S. App. LEXIS 22838, at *24 (2d Cir. Nov. 4, 2008) (noting that Supreme Court rejected manifest disregard of law as an entirely separate basis for vacatur but did not "abrogate the [ ] doctrine altogether"); *see also Prime Therapeutics LCC v. Omnicare, Inc.*, 555 F. Supp. 2d 993, 999 (D. Minn. 2008) ("[D]oes [the decision in *Hall Street*] suggest that courts can no longer vacate an arbitration award based on judicially-created grounds such as 'manifest disregard of the law' . . . this Court believes the answer to that question is yes.").   This Court takes no position on the continued viability of the "manifest disregard of the law" grounds for vacatur subsequent to *Hall Street*.   Even assuming it remains a basis for vacating an arbitration award, Franchisees cannot make the requisite showing of a manifest disregard of the law.

in favor of the arbitration award.  *U.S. Steel Mining Co., L.L.C. v. Wilson Downhole Servs.*, Civ. A. No. 00-1758, 2006 U.S. Dist. LEXIS 72737, at *2 (W.D. Pa. Oct. 5, 2006) (quoting *Mutual Fire, Marine & Inland Reins. Co.*, 868 F.2d 52, 56 (3d Cir. 1989)).   Mere disagreement with the arbitrator's decision or a belief that the arbitrator committed a serious error is insufficient to vacate or modify the award.  *United Trans. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995).  The party seeking vacatur bears the burden of proof.  *See Lebeau v. Oppenheimer & Co.*, Civ. A. No. 05-6779, 2006 U.S. Dist. LEXIS 42613, at *5 (E.D. Pa. June 23, 2006).

## III.     DISCUSSION

Sally and Ashroff make two principal arguments in favor of vacating the arbitration award.  First, they argue that Ashroff did not receive an opportunity to be heard because he did not receive notice of the arbitration.  Given this, they contend that Arbitrator Salla's failure to ensure proper service on both Sally and Ashroff requires this Court to vacate the arbitration award.  Sally and Ashroff also contend that AAMCO overstated the amount owed it.

### A.     Notice

Respondents argue that lack of service upon Ashroff and the failure of the arbitrator to make a finding regarding proper service was somehow "misconduct," "misbehavior," an "imperfect execution" of the arbitrator's power, or exceeded the powers of the arbitrator and therefore warrants vacatur or modification of the award.  (Mem. of Law in Supp. of Pet. to Vacate Arbitration Award at 6-7.)

When deciding whether an arbitrator has exceeded his powers, a court must determine if the form of the relief awarded is rationally derived either from the parties' agreement or from their

6

submissions to the arbitrator and whether the terms of the relief are rational. *Southco, Inc. v. Reell Precision Mfg. Corp.*, 556 F. Supp. 2d 505, 511 (E.D. Pa. 2008) (citations omitted).  A court must affirm an award unless its terms are "completely irrational." *Id*.  The question is whether the arbitrator's interpretation of the contract "can in any rational way be derived from the agreement, viewed in the light of its language, its context, and other indicia of the parties' intention." *Id*. (quoting *Exxon Shipping Co. v. Exxon Seaman's Union*, 73 F.3d 1287, 1295 (3d Cir. 1996)).

The Franchise Agreement mandated that when notice is required pursuant to the agreement, it "shall be in writing and shall be sent by registered or certified mail, return receipt requested or overnight mail."  (Franchise Agreement ¶ 21.4.)  Franchisees agreed to accept notice at their franchise location.  (*Id*.)  It is not clear whether this provision applies here, however, because the arbitration and mediation clause do not specifically demand notice.  In fact, the arbitration and mediation clause in the Franchise Agreement required that disputes submitted to arbitration be settled "in accordance with the Commercial Arbitration Rules of the American Arbitration Association." (*Id*. ¶ 22.1(b).)  The AAA's Commercial Arbitration Rules allow notice of arbitration commencement papers, as well as any other papers, notices, or process related to the arbitration, to be served by mail addressed to the party, or its representative, at the last known address.  (Pet. to Vacate Arbitration Award Ex. D [AAA Rules] at R-39(a).)  Additionally, overnight delivery and fax are acceptable methods of service.  (*Id*. at R-39(b).)  The AAA Rules also contain a waiver provision that states:  "[a]ny party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object." (*Id*. at R-37.)

It appears from the record that AAMCO sent a single arbitration demand to the business of

7

the franchise, rather than separate notices for both Sally and Ashroff.  (O'Connell Aff. ¶ 2.)  Sally does not recall how the arbitration demand was sent to him and AAMCO states that it was mailed and not returned by the post office.  (Sally Aff. ¶ 9; O'Connell Aff. ¶ 2.)  AAMCO's statement that it was mailed to Sally and Ashroff at the location of their AAMCO franchise is uncontroverted and Sally concedes that he received notice of the arbitration.  Thus, under both the Franchise Agreement and the AAA Rules, AAMCO's service was proper.  Furthermore, both the arbitrator and counsel for AAMCO made repeated attempts to contact Ashroff personally.  (Report & Order; Opp'n to Pet. Ex. E [Lutz Aff.] ¶¶ 3, 5-8.)  Additionally, by proceeding with the arbitration, Sally and Ashroff waived arguments of improper service.

While it is regrettable that Sally hid his business troubles from Ashroff, this occurred through no fault of AAMCO or the arbitrator and it certainly shows no misconduct, misbehavior or exceeding of power on the part of the arbitrator.  Sally was aware of the arbitration well in advance of the hearing and had adequate time to prepare for the arbitration.  *See N.J. Bld. Laborers' Statewide Benefit Funds and the Trustees Thereof v. Mark Constr.*, Civ. A. No. 07-5934, 2008 U.S. Dist. LEXIS 62174, at *4 (D.N.J. Aug. 12, 2008) (finding that a month to prepare for arbitration was sufficient even if party did not receive initial notification of hearing).  He attempted to obtain counsel and tried to settle the dispute months prior to the arbitration.  Furthermore, counsel for Sally appeared at the arbitration hearing on August 7, 2008, and was informed that his representation "included both Sally and Ashroff." (Schwartz Aff. ¶ 4.)  The arbitrator's award noted that Sally and Ashroff were represented by counsel at the arbitration. (Arbitration Award.) Beyond question, Sally had notice of the arbitration, participated in preliminary matters before the arbitrator, and was represented at the arbitration by counsel who also stated that he represented Ashroff.  Thus,

Arbitrator Salla's belief that Ashroff's interests were represented by counsel was rational and supported by the record.

But even assuming Ashroff failed to receive notice of the arbitration, that failure cannot be traced to either AAMCO or Arbitrator Salla.  Thus, the arbitrator did not engage in "misconduct," "misbehavior," an imperfect execution, or an exceeding of his powers as contemplated by the FAA. Arbitrator Salla had before him attorneys who advocated their clients' positions; he rendered a decision after having "duly heard the proofs and allegations of the Claimant AAMCO Transmissions, Inc., and the Respondents Rizvi M. Sally and Mohammed A. Ashroff having appeared through counsel." (Arbitration Award.)  These facts do not provide a basis to vacate the arbitration award or grant a rehearing.

### B.  Franchisees' Defenses

Respondents also argue that AAMCO's claims are overstated and it would be "grossly unjust" to fail to provide an opportunity for their claims to be heard.  (Mem. of Law in Supp. of Pet. to Vacate Arbitration Award at 9.)  Respondents do not even attempt to tie this argument for vacatur or modification to one of the reasons outlined by the FAA.  Sally and Ashroff claim AAMCO inflated the amount of money they owe; AAMCO begs to differ.  To support its position, AAMCO asserts that it presented documentation to Ashroff and Sally prior to the arbitration hearing.  (Opp'n to Pet. Ex. F [Ferrier Aff.] ¶ 2.)  Ferrier, AAMCO's Director of Financial Services, also testified at the arbitration that any payments and credits due to Franchisees were applied to their account.  (*Id.* ¶ 3.)

Sally and Ashroff now claim they have meritorious defenses that will greatly reduce their liabilities.  Whether or not these defenses are meritorious, the appropriate place to present these

defenses was at the arbitration hearing. "[T]he [c]ourt's role in reviewing the outcome of arbitration proceedings is not to correct factual or legal errors made by an arbitrator and courts should not re-weigh the evidence to decide whether to vacate the award." *Southco*, 556 F. Supp. 2d at 510 (citations omitted). As the Seventh Circuit has ruled, when parties agree to arbitrate, "they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that the arbitrators made a mistake but that they violated the agreement to arbitrate, as by corruption, evident partiality, exceeding their powers, etc." *Wise v. Wachovia Secs., LLC*, 450 F.3d 265, 269 (7th Cir. 2006). The time to examine the facts underlying the dispute has passed. *Southco*, 556 F. Supp. 2d at 510. Thus, to the extent Franchisees had meritorious defenses to AAMCO's claims, they were required to bring them before the arbitrator.

## IV. CONCLUSION

Assuming that Sally kept secret his financial difficulties from his father-in-law, it is unfortunate that his actions have caused Ashroff trouble. This Court cannot, however, punish AAMCO because Sally concealed the dispute with AAMCO from his father-in-law. AAMCO is entitled to have its dispute adjudicated in accordance with the law and here the law requires upholding the arbitration award. Lacking any basis under the FAA to vacate or modify the arbitration award, this Court grants the petition to confirm the award. An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In the matter of the Arbitration Between | : | |
| | : | |
| AAMCO TRANSMISSIONS, INC., | : | |
| Claimant, | : | **MISCELLANEOUS ACTION** |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RIZVI M. SALLY & | : | |
| MOHAMMED A. ASHROFF, | : | No. 08-151 |
| Respondents. | : | |

**AND NOW**, this **17th** day of **December**, **2008**, upon consideration of AAMCO's Petition to Confirm Arbitration Award, Respondents' Motion to Vacate Arbitration Award, or, in the Alternative, for Rehearing, and AAMCO's response thereto, it is hereby **ORDERED** that:

1.  AAMCO's petition (Document No. 1) is **GRANTED**.

2.  Respondents' petition (Document Nos. 5 & 6) is **DENIED**.

3.  The arbitration award is **CONFIRMED** and judgment is **ENTERED** in accordance with the award.

4.  The Clerk of Court is directed to close this case.

BY THE COURT:

**Berle M. Schiller, J.**